# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00642-SCT

*THE ESTATE OF SAMUEL JOHNSON, M.D.*

*v.*

*JOSHUA COSBY CHATELAIN, A MINOR,*
*BY AND THROUGH HIS MOTHER AND*
*ADULT NEXT FRIEND, THERESA CHATELAIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2005 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MILDRED M. MORRIS |
| | MOLLY M. WALKER |
| ATTORNEYS FOR APPELLEE: | J. ANDREW PHELPS |
| | WILLIAM L. DUCKER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND RENDERED - 11/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY  AND GRAVES, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This medical malpractice case concerns a physician who was working at a state hospital at the time the alleged negligence occurred.  The circuit court denied the physician's motion for summary judgment based on sovereign immunity.  We find that sovereign immunity does apply, and we reverse the circuit court's judgment, and render judgment for the physician's estate.

**FACTS**

¶2. Samuel Johnson, M.D., Professor and Director of Ophthalmology at the University of Mississippi Medical Center, performed surgery on Joshua Chatelain, then nearly twenty-five (25) months old, to correct the child's estropia ("cross-eye" syndrome). Both parties agree that Joshua's estropia was corrected and has remained so; Dr. Johnson performed tests for vision prior to and after the surgery; Joshua seemed to pass these tests; and both Dr. Johnson and Joshua's mother, Theresa Chatelain, assumed that Joshua had sight in both eyes before and immediately after surgery.

¶3. A few months after the surgery, Theresa allowed Jonathan Calkwood, M.D., a neurologist, to examine Joshua's eyes. Theresa alleges that Dr. Calkwood stated that Joshua had been blind in his right eye since birth and that the surgery performed for estropia would not have improved visual acuity in that eye.

¶4. Theresa filed a medical malpractice suit in Hinds County Circuit Court against Dr. Johnson,[1] alleging that Dr. Johnson performed an unnecessary, merely cosmetic, surgery, thereby causing unnecessary pain and anguish which amounted to gross negligence. Theresa asked for an award of punitive damages in addition to actual damages.

¶5. The circuit court denied Dr. Johnson's motion for summary judgment, ruling that the question of whether Dr. Johnson was a state employee remained in dispute and that the issue was one for a jury to decide. We granted Dr. Johnson permission to appeal from this ruling. *See* M.R.A.P. 5.

---

[1] During the course of the suit, Dr. Johnson died, and Theresa amended the complaint to name Dr. Johnson's estate as the defendant.

2

¶6.    Johnson raises two issues:  (1) whether Dr. Johnson is protected by sovereign immunity; and (2) whether the plaintiff provided genuine issues of material fact.

## DISCUSSION

¶7.    We conduct a de novo review when reviewing a lower court's grant or denial of summary judgment.  ***Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.***, 708 So. 2d 1351, 1354 (Miss. 1998). The evidence must be viewed in the light most favorable to the non-moving party. ***Id***.

¶8.    Summary judgment is proper if there is no genuine issue of material fact. M.R.C.P. 56 (c).  The burden of demonstrating that there is no genuine issue of material fact falls upon the party requesting the summary judgment.  ***Corey v. Skelton***, 834 So. 2d 681, 684 (Miss. 2003).  We must carefully review all evidentiary matters before the Court -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. -- in the light most favorable to the party against whom the motion for summary judgment is made.  ***Id.***  In ***Corey***, we also stated:

> [When] a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings; his response must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.  If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed.

***Id.*** at 684 (citing ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000)).  It is not our duty to weigh the competing evidence; it is our duty to determine if there is conflicting evidence for trial. ***Id.***

## SOVEREIGN IMMUNITY

¶9. Dr. Johnson performed surgery on Joshua on March 3, 1993. The statute pertaining to sovereign immunity, as it existed in March of 1993, provided that, "[f]rom and after July 1, 1992, as to the state, and from and after October 1, 1992, as to political subdivisions . . . no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2) (Supp. 1991). The presumption of an employee's actions being within the scope of employment is rebuttable. Miss. Code Ann. § 11-46-5(3) (Supp. 1991).

¶10. The circuit court denied Dr. Johnson's motion for summary judgment because it found that a question of fact existed as to Dr. Johnson's status as a state employee. Courts consider the following factors in determining whether a physician is acting as a state employee: (1) the nature of the function performed; (2) extent of state's interest; (3) degree of control and direction exercised by the state over the employee; (4) level of judgment and discretion required to perform act; and (5) compensation received for services rendered. *Sullivan v. Washington*, 768 So. 2d 881, 884 (Miss. 2000); *Miller v. Meeks*, 762 So. 2d 302, 310 (Miss. 2000). With few exceptions, independent contractors are excluded from the definition of "state employee" and therefore do not benefit from the provisions of the sovereign immunity statutes.

　　　1.　　*The Nature of the Function Performed.*

¶11. Attached to the motion for summary judgment was an affidavit from a member of the Board of Trustees of State Institutions of Higher Learning averring that, during the surgery, Dr. Johnson functioned as an attending physician and as a supervisor over a resident

4

physician. He did not have a private patient relationship with Joshua; rather, he served a public function by providing care for a patient who had little ability to pay.

2. *The Extent of the State's Interest.*

¶12. The State has a strong interest in maintaining a practical and educational environment for residents and supervising physicians in its state hospitals, meeting the needs of both the physicians and the patients. *Sullivan*, 768 So. 2d at 885. Also, UMMC is fulfilling its operational purpose under Miss. Code Ann. § 37-115-31 (1996) by providing care to Joshua, regardless of his ability to pay.

3. *The Degree of Control and Direction Exercised by the State Over the Employee.*

¶13. The fact that Dr. Johnson was obligated to fulfill his duty as teacher and supervisor of residents at the time of the surgery and throughout Joshua's treatment shows a certain amount of control exercised by UMMC. There was less state control exercised over the actual performance of the surgery and subsequent diagnosis and treatment. However, state control existed in the form of regulations.

4. *Level of Judgment and Discretion Required to Perform Act*

¶14. Dr. Johnson exercised some amount of judgment and discretion in his treatment, observations and diagnosis of the child. However, as in *Sullivan*,

> while this is a consideration, it is not determinative. Virtually every act performed by a person involves the exercise of some discretion. Obviously, a professional necessarily retains a significant amount of discretion in the operation of his profession. This is especially true of physicians who are bound to exercise their judgment without interference from others. The Hippocratic Oath requires that the physician " . . . use [his] power to help the sick to the best of [his] ability and judgment."

5

*Sullivan*, 768 So. 2d at 885 (quoting *Miller v. Meeks*, 762 So. 2d 302, 310 (Miss. 2000)).

5.      *Compensation Received for Services Rendered*

¶15.    The affidavit stated that Dr. Johnson was not an independent contractor and that billing for physician care was done through the medical departments. It is mandated that the money received by the Ophthalmology Department is to be collected and shared with UMMC under a percentage arrangement.

¶16.    In *Sullivan*, we found certain factors, factors which are also found in the present case, to be indicative of a state employed physician, including the following:

a.      Treatment of patients in a facility provided by UMMC which was used as a base for teaching. In *Sullivan*, we found that physicians-professors functioning in this environment play a vital part in a working teaching hospital where the primary purpose is to educate future doctors in the State of Mississippi.

b.      Supervision of the progress of interns and residents provides the training necessary to ensure that Mississippi has a ready pool of competent physicians, which constitutes a strong state interest.

c.      An assignment to the operating room to supervise a student indicates state control over the employee.

d.      Serving a public function by providing care for patients unable to pay indicates state interest and state control.

e.      State control is suggested where a physician cannot choose his patients.

f.      No private patient relationship with the patient/plaintiff indicates that the physician is a state employee rather than an independent contractor.

6

g.      Although the physician must exercise his own discretion and judgement in the treatment procedures, this fact does not necessarily prove that the physician is an independent contractor since any professional must exercise some discretion of his own to perform his duties properly. *Sullivan*, 78 So. 2d at 884-85.

¶17.    In *Sullivan*, we found that these factors weighed in favor of determining that the physician is a state employee and not an independent contractor.

¶18.    After evaluating Dr. Johnson's circumstances under these factors, we find that Dr. Johnson fits well within the definition of a state employee who enjoys immunity.

¶19.    There is further evidence that Dr. Johnson acted as a state employee. The affidavit states that UMMC employed Dr. Johnson and that the hospital is owned and operated by the Board on behalf of the State of Mississippi. It affirms that Dr Johnson was employed by that hospital throughout the treatment of the child.

¶20.    Miss. Code Ann § 11-46-5(3) (1991), the applicable statute at the time of the incident at issue, states that "it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." On appeal, Theresa does not challenge the fact that Dr. Johnson was an employee of the State.

¶21.    Additional evidence suggests that there was never a dispute over whether Dr. Johnson was an employee:

¶22.    Paragraph 6 of Johnson's motion for summary judgment states that the physician was an employee of the state. In response, Theresa admitted that "apparently Dr. Johnson was an employee of the University Medical Center."

7

¶23. Paragraph 1 of the motion for summary judgment states that Dr. Johnson was licensed in the State of Mississippi and was a Professor and Chairman of the Ophthalmology Department at UMMC and then directs the reader to Dr. Johnson's affidavit which was attached. In the response to the motion, Theresa admits paragraph 1 but denies the issues in three paragraphs of the Johnson affidavit - paragraphs 12, 13 and 14. The rest of Johnson's affidavit is uncontested.

¶24. In paragraph 4 Johnson states that he has a contract with the State and is an employee of the State, which is uncontested for purposes of summary judgment consideration.

¶25. Johnson's status as a state employee, the affidavit from the Board, Theresa 's failure to rebut the presumption and the fact that Johnson clearly met the *Sullivan* standard of state employment lead us to find that the circuit court's conclusion that there were genuine issues of material fact as to whether Johnson was a state employee and the subsequent denial of summary judgment was clearly in error.

¶26. Although the circuit court addressed only the state employment status issue and was in error on that issue, we will address the remaining issue of whether sovereign immunity applied to Dr. Johnson.

¶27. Johnson claims that the circuit court erroneously relied on *Sparks v. Kim*, 701 So. 2d 1113 (Miss. 1997), as a basis for denial of summary judgment. *Sparks* holds that the sovereign immunity doctrine is not to be applied retroactively. *Id.* at 1114. It may be inferred that the circuit court believed that Johnson contended the 1993 amendments to the sovereign immunity statutes applied to him retroactively, although the circuit court never explicitly stated so. It did, however, state that it "acknowledges that in accordance with

8

Mississippi law, retroactive application of the Sovereign Immunity Doctrine is not allowed," and then cited to *Sparks*. It may be inferred that this is one reason for the denial of summary judgment.

¶28. Johnson contends that his source of defense does not stem from the 1993 amendments, but from the amendments to Miss. Code Ann. § 11-46-3 (Supp. 1995) and Miss. Code Ann. § 11-46-6 (Supp. 1995) which were made effective as of September 16, 1992, by the 1992 Extraordinary Session of the Mississippi Legislature.

¶29. Furthermore, he argues, the circuit court did not apply *Jones v. Baptist Memorial Hospital - Golden Triangle, Inc.*, 735 So. 2d 993, 996 (Miss. 1997), which explicitly states that "§ 11-46-3 and § 11-46-16 of House Bill No. 2 (1992) [of the 1992 Special Session Amendments to the Mississippi Code Annotated (1972)] as well as Miss. Code Ann. § 11-46-7 (2) . . . are controlling regarding the law of sovereign immunity in causes of action which accrued from September 16, 1992, until April 1, 1993." *Id*. The surgery occurred within the controlling time frame - in March of 1993.

¶30. Johnson was employed by the State at the time in question and the laws of the 1992 Extraordinary Session provide immunity to physicians at the time of the incident. We find that Johnson was immune from suit throughout his treatment of the child and that, therefore, he was erroneously denied summary judgment.

## CONCLUSION

¶31. Because Theresa has failed to create an issue of material fact as to Dr. Johnson's status as a governmental employee, we find that the circuit court erred in denying Dr. Johnson's motion for summary judgment. Therefore, we reverse the circuit court's judgment

9

and render judgment here finally dismissing with prejudice the plaintiff's complaint and this action against the Estate of Dr. Johnson.

¶32.   **REVERSED AND RENDERED.**

**SMITH, C.J., COBB, P.J., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.   GRAVES, J., CONCURS IN RESULT ONLY.   EASLEY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ.**

**EASLEY, JUSTICE, SPECIALLY CONCURRING:**

¶33.   While I am sensitive to any allegations of harm to a child, I cannot ignore the weaknesses of this case, both legally and factually.  This case demonstrates a complete and utter lack of a maintainable cause of action against the late, Dr. Samuel Johnson, a former professor and Chairman of the Ophthalmology Department at the University of Mississippi Medical Center (UMMC).  First, the majority is correct in its holding that the cause of action against Dr. Johnson's estate is barred by the doctrine of sovereign immunity.

¶34.   The majority provides a detailed analysis of the factors that outline Dr. Johnson's status as an employee of the State employed at UMMC at the time in question that the eye surgery was performed.  UMMC is a teaching institution operated by the Board of Trustees of State Institutions of Higher Learning, a state agency.  Even the plaintiff, Joshua Chatelain's mother, admitted in her affidavit in response to the motion for summary judgment that Dr. Johnson was a state employee employed by UMMC.  Chatelain's surgery was performed at UMMC and the billing was handled by UMMC.  Dr. Johnson was employed by UMMC throughout the treatment provided to Chatelain.

¶35.   In *Pickens v. Donaldson,* 748 So. 2d 684, 687 (Miss. 1999) this Court held that:

The MTCA [Mississippi Torts Claim Act] provides:

> the exclusive civil remedy against a governmental entity or its
> employee for acts or omission which give rise to a suit.

*See* **City of Tupelo v. Martin**, 747 So. 2d 822, 826 (Miss. 1999) (the MTCA provides the

exclusive remedy for an injured party by a governmental entity's act or omissions); *see also*

Miss. Code Ann. § 11-46-7 (1).[2] Miss. Code Ann. 11-46-5(3) (1992), applicable at the time,

provides:

> [I]t shall be a **rebuttable presumption** that any act or omission of an
> employee within the time and at the place of his employment is within the
> course and scope of his employment.

(Emphasis added).

¶36.    Here, the plaintiff's failure to rebut the presumption that Dr. Johnson was a state

employee and the facts that demonstrate that Dr. Johnson was a state employee at the time

---

[2] Miss. Code Ann. § 11-46-7(1) (1991), applicable at the time, provides:

The remedy provided by this chapter against a governmental entity or its
employee is, from and after July 1, 1992, as to the state, and, from and after
October 1, 1992, as to political subdivisions, **exclusive of any other civil
action or civil proceeding by reason of the same subject matter against the
governmental entity or its employee or the estate of the employee for the
act or omission which gave rise to the claim or suit**; and any claim made or
suit filed against a governmental entity or its employee to recover damages for
any injury for which immunity has been waived under this chapter shall be
brought only under the provisions of this chapter, notwithstanding the
provisions of any other law to the contrary.

(Emphasis added).

of the treatment leaves no question that sovereign immunity applied. Accordingly, Dr. Johnson's estate is clearly immune from being sued in his individual capacity.

¶37. Secondly, even if that Dr. Johnson was not immune as a state employee, the facts regarding Chatelain's treatment provided by Dr. Johnson fail to demonstrate any medical malpractice. The plaintiff failed to offer any affidavit or sworn testimony from any medical expert that Dr. Johnson acted with gross negligence in performing the surgery. The trial court should have granted the motion for summary judgment based on the plaintiff's failure to demonstrate the existence of a material fact. *See Moss v. Batesville Casket Co.*, 935 So. 2d 393, 398 (Miss. 2006). In *Batesville Casket Co.*, this Court held:

> Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c); *see Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss. 1998). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990). *See also Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000). A fact is material if it "tends to resolve any of the issues properly raised by the parties." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995).
>
> "If, in this view, there is **no genuine issue of material fact** and, the moving party is entitled to judgment as a matter of law, **summary judgment should forthwith be entered in his favor**. Otherwise, the motion should be denied." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393 (Miss. 2001).

*Batesville Casket Co.*, 935 So. 2d at 398 (emphasis added).

¶38. Had Dr. Johnson not performed the corrective eye surgery, Chatelain would have spent the rest of his life cross-eyed. Surely, the plaintiff does not expect the Court to accept

that she would have refused to help her son correct this situation. The plaintiff sought Dr. Johnson to perform the procedure, and the surgery was performed when Chatelain was twenty-five months old. The surgery was apparently successful. Even the plaintiff does not dispute that the estropia, or cross-eyed syndrome, was corrected. The facts do not reveal that Chatelain's suffered any complications from the surgery to correct the estropia.

¶39. Further, neither Dr. Johnson nor the plaintiff was aware of Chatelain's blindness in his right eye. Months later, it was discovered that Chatelain had been blind in his right eye since birth. There is no evidence or allegation that the blindness in the right eye was attributable to the surgery by Dr. Johnson. Based on the facts that Chatelain only has vision in his left eye, would the plaintiff want her son's cross-eyed syndrome to remain uncorrected? What harm resulted from the correction of Chatelain's cross-eyed syndrome?

¶40. In fact, the sole allegation in the complaint amounts to Dr. Johnson performing a purely cosmetic, unnecessary surgery on Chatelain. The plaintiff seeks not only alleged actual damages but also punitive damages for Dr. Johnson's alleged gross negligence. Obviously, the complaint is completely devoid of merit. For the reasons stated herein, I am compelled to write separately to find that the trial court erred in denying the motion for summary judgment.

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION.**