# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-IA-01171-SCT

*WATSON QUALITY FORD, INC.*

*v.*

*CARLOS CASANOVA AND SHIRLEY CASANOVA*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2007 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BARRY DOUGLAS HASSELL |
| | MICHAEL WAYNE BAXTER |
| ATTORNEY FOR APPELLEE: | CARROLL RHODES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/04/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2007-IA-01172-SCT

*FORD MOTOR COMPANY*

*v.*

*CARLOS CASANOVA AND SHIRLEY  CASANOVA*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2007 |
| TRIAL JUDGE: | TOMMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WALKER W. JONES, III |
| | BARRY W. FORD |
| | BRADLEY W. SMITH |
| | EVERETT E. WHITE |
| ATTORNEY FOR APPELLEE: | CARROLL RHODES |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/04/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     In this auto-accident case, the plaintiff alleges breach of both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose of a Ford van. The question presented is whether the plaintiff has demonstrated a triable issue of material fact, as to whether the alleged breaches of warranty were a proximate cause of the accident. Because we find no such triable issue in the record, we reverse the trial court's denial of summary judgment.

### BACKGROUND FACTS AND PROCEEDINGS

¶2.     On January 7, 2000, Carlos Casanova's employer, Resilient Flooring,  purchased a new Ford Econoline E-250 van from Watson Quality Ford for use in its flooring business. Casanova alleges that, when he drove the van off the lot, the van pulled to the right. Casanova was involved in two separate wrecks while driving the van on January 20, 2000. After the wrecks occurred – and without having any repairs performed on the van– Casanova continued to drive the van to job sites both in and out of Mississippi.  By May 2000, Casanova put between 11,000 and 12,000 miles on the van.

¶3.     Casanova testified that he took the van back to Watson Quality several times between January and April with complaints of continuous pulling.  Casanova also testified that when he took the van to Watson Quality on May 9, he was told not to drive the van, and to leave it for diagnosis.  But he stated he did not do so because, his boss, Jack DeMoney, told him to return to work.

2

¶4.    On May 11, Casanova traveled to Vicksburg for a job. While driving the van down a hill at about ten miles per hour, he collided with a car coming up the hill at about twenty-to-thirty miles per hour. Casanova stated that as he tried to turn the steering wheel to the left, it was hard to turn, and he heard a loud pop, after which he could no longer steer the van. The left front of the van hit the left front of the car, bounced off, and hit again. The van was taken back to Watson Quality for a damage assessment. Ridgeland Body Shop repaired the body of the van and replaced some damaged steering components, which were either destroyed or recycled before either party could view them.

¶5.    Casanova and his wife Shirley filed suit against Ford and Watson Quality on May 6, 2003, alleging that the accident was caused by one or more "malfunctioning" steering components in the van, and that Watson Quality had negligently failed to repair the malfunctioning components. The original complaint alleged six counts against the defendants: negligence, gross negligence, strict liability (manufacture and design), strict liability (failure to warn), breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. On September 15, 2006, the parties entered a Stipulation of Dismissal, dismissing the gross-negligence and strict-liability claims against both parties. The plaintiffs also dismissed their negligence claim against Ford, but maintained their negligence claim as to Watson Quality.

¶6.    Ford and Watson filed motions for summary judgment, which the trial judge denied without opinion. We granted interlocutory appeal.

**STANDARD OF REVIEW**

¶7.	This Court reviews the grant or denial of summary judgment de novo. *Estate of Johnson v. Chatelain,* 943 So. 2d 684, 686 (Miss. 2006) (citation omitted). The evidence must be viewed in the light most favorable to the non-moving party. *Id.* The burden of demonstrating that there is no genuine issue of material fact falls upon the party requesting the summary judgment. *Id.* (citation omitted).

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings; his response must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Id.* at 687 (citation omitted). "Pursuant to Mississippi Rule of Procedure 56, summary judgment is appropriate when the non-moving party has failed to 'make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Bullard v. Guardian Life Ins. Co.,* 941 So. 2d 812, 814 (Miss. 2006).

**ANALYSIS**

**I. Mississippi Products Liability Act**

¶8.	Defendants argue that Casanova's exclusive remedy is to bring an action under the Mississippi Products Liability Act ("MPLA"). We disagree. We find no statutory requirement that makes the MPLA the exclusive remedy for claims of malfunctioning automobiles. Moreover, this Court previously has held that breach of implied warranty

4

claims are not barred by the MPLA. ***Bennett v. Madakasira***, 821 So. 2d 794, 808 (Miss. 2002).

## II. Implied Warranty of Merchantability

¶9.    The implied warranty of merchantability provides that, "[w]hen a sale of goods is made, there is an implied warranty that the goods are merchantable if the seller is a 'merchant with respect to goods of that kind." ***Vince v. Broome,*** 443 So. 2d 23, 26 (Miss. 1983) (citing Miss. Code Ann. § 75-2-314).[1]  This Court has stated:

> There are five elements which a plaintiff must prove to recover under section 75-2-314: (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the

---

[1]Mississippi Code Annotated Section 75-2-314(1)-(3) (Rev. 2002) states:

(1) Except as provided in subsection (5), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as:
- (a)    Pass without objection in the trade under the contract description;  and
- (b)    In the case of fungible goods, are of fair average quality within the  description; and
- (c)    Are fit for the ordinary purposes for which such goods are used; and
- (d)    Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
- (e)    Are adequately contained; packaged and labeled as the agreement may require; and
- (f)    Conform to the promises or affirmations of fact made on the container or label if any.

(3) Other implied warranties may arise from course of dealing or usage of trade.

plaintiff or his property, (4) *caused proximately and in fact by the defective nature of the goods*, and (5) notice to the seller of the injury.

*Id.* (internal citation omitted) (emphasis added). *See also* **Crocker v. Sears**, 346 So. 2d 921, 924 (Miss. 1977) ("[T]his Court has not hesitated to reverse awards in favor of buyers in warranty cases where there was no evidence connecting the damage to the defect."). Privity of contract is not required. Miss. Code Ann. § 11-7-20 (Rev. 2004).

¶10.     Even though we must (for summary-judgment purposes) view as true Casanova's assertion that the van was unmerchantable because it pulled the right from the first day, he must nevertheless offer evidence that the wreck was *caused* by the alleged defect. Casanova's expert, Rev. Victor Dixon, could not point to the cause of the wreck,[2] and Casanova offered no other proof of causation. Casanova testified that he heard a "pop" and the steering ceased to work. There is not one scintilla of evidence as to what caused the "pop" or the loss of control. Thus, because Casanova has failed to offer any evidence to support one of the essential elements of his claim, no triable fact exists, and summary judgment should have been granted. Even accepting as true all of Casanova's assertions of "pulling" problems and trips to Watson for repairs, no evidence exists that the wreck was caused by the alleged "pulling" problem. Because no legal connection exists between the "pulling" problem and the wreck, Casanova's claim for breach of the implied warranty of merchantability fails.

---

[2]Rev. Dixon admitted that he never examined the allegedly defective parts from the van after the accident, nor did he conduct any tests, etc., on the parts.

6

¶11.   Moreover, assuming that Casanova *had* successfully proven that the "pulling" problem caused the wreck, he still would have no right of recovery, as he failed to offer the defendants a chance to cure the defect.  This Court has held: "[T]hough there may have been a breach  of the Warranty of merchantability, the seller has a right to attempt cure." *Fitzner Pontiac-Buick-Cadillac, Inc., v. Smith,* 523 So. 2d 324, 328 (Miss. 1988).  An opportunity for the seller to cure is a "reasonable requisite" of a buyer's "right of recovery."[3]

**III.  Implied Warranty of Fitness for a Particular Purpose**

¶12.   In *Garner v. S&S Livestock Dealers, Inc.,* 248 So. 2d 783, 785 (Miss. 1971), this Court explained:

> In order for the plaintiff to recover under the implied warranty of fitness for a particular purpose, the evidence must be sufficient for the jury to find (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose.

---

[3] As this Court stated in *Fitzner Pontiac-Buick-Cadillac, Inc., v. Smith*, 523 So. 2d 324, 328 n.1 (Miss. 1988):

> We recognize that a strict reading of the cure provision of Miss. Code Ann.§ 75-2-508 (1972) reveals no explicit application to the revocation situation with which we are here concerned . . . The law's policy of minimization of economic waste strongly supports recognition of a reasonable opportunity for cure.  Though the express language of Section 75-2-508 does not apply here, cure is not excluded by Section 75-2-608.  By analogy to Section 75-2-508 and in furtherance of the policy justification undergirding that statute and our common law doctrine of cure in contacts generally, we recognize that, before [the plaintiff] was entitled to get his money back, [the seller] had a right to a reasonable opportunity to cure the vehicle's deficiencies.

¶13. Furthermore, this Court has held that no claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose. *Ford Motor Co. v. Fairley,* 398 So. 2d 216, 219 (Miss. 1981) ("Neither was there any breach of an implied warranty of fitness for a particular purpose since the automobile was purchased for a very ordinary purpose."). Here, Casanova offered no evidence that the van was purchased for anything other than the ordinary purposes for which a van would be used. Thus Casanova's second warranty claim fails.

**IV. Negligence of Watson Quality**

¶14. It is elementary that "[t]he elements of proof required to support a claim for damages for negligence are a duty, a breach of that duty, damages, and proximate cause." *Rolison v. City of Meridian,* 691 So. 2d 440, 444 (Miss. 1997) (citations omitted). Casanova's claim of negligence fails not because he failed to offer proof of negligence, but rather because he presented no evidence of causation. Even assuming, as we must for summary-judgment purposes, that Casanova took the van to Watson Quality several times for repairs and that Watson regularly failed to make repairs, he nevertheless has failed to connect in any way that alleged negligence to the wreck. His testimony of a "pop" and a resulting inability to steer is unconnected by any evidence to Watson's alleged negligent repair. Casanova's claim for negligence against Watson fails.

CONCLUSION

¶15.    For the reasons stated, we reverse the trial court's ruling and enter judgment for the defendants.

¶16.    **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND LAMAR, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART.  DIAZ, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY AND GRAVES; RANDOLPH, J., JOINS IN PART.**

**DIAZ, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶17.    Although I agree with Part III of the Court's opinion regarding the alleged breach of the implied warranty of fitness for a particular purpose, Maj. Op. at ¶¶11-12, I disagree with Parts II and IV because the majority fundamentally misunderstands the minuscule standard of proof necessary to withstand a motion for summary judgment.

¶18.    "The summary judgment motion is the only pretrial motion which allows the Court to 'go behind the pleadings' and consider evidence such as admissions, answers to interrogatories, depositions, and affidavits." *Henderson v. Un-Named Emergency Room*, 758 So. 2d 422, 424 (Miss. 2000) (quoting *Lattimore v. City of Laurel*, 735 So. 2d 400, 402 (Miss. 1999)). Although the motion is routine, its grant should be exceedingly uncommon, as it is appropriate only when examination of the evidence indicates that "there is no genuine issue of material fact" for a jury to consider. *Id.*

¶19.   This rule presents perhaps the most commonly bandied-about phrase in all of appellate jurisprudence, and perhaps this common repetitiveness is what leads today's majority astray. But this maxim means precisely what it says – that summary judgment is appropriate only when the record is entirely, utterly, and completely devoid of evidence on a material issue. If even a shred of evidence – viewed in the light most favorable to the nonmoving party, *Parker v. Harrison County Bd. of Supervisors*, 987 So. 2d 435, 437 (Miss. 2008) – exists that might lead a jury to conclude that an allegation is more likely true than false, then summary judgment is inappropriate, and the case is rightly left to determination by a jury. Summary judgment is not a tool by which courts distinguish between strong cases and weak cases; it discriminates only against cases that present absolutely no plausible basis in evidence.

¶20.   Casanova's evidence, viewed in the most favorable light, clearly presents issues of material fact for his claims of a breached implied warranty of merchantability and negligence against Watson Quality Ford. After Casanova's crash on May 11, 2000, an insurance adjuster for Casanova's employer determined that the left-front pitman arm, a critical component of the steering mechanism, was broken. Casanova's expert witness testified at deposition that the odds that the pitman arm broke in the crash were "one in a million," and that in twenty years of experience, he had never seen a crash such as this result in a broken pitman arm. This malfunction is precisely the sort of problem that would lead to the loss of steering control that Casanova described. Plainly, the majority's contention that Casanova failed to

10

show a causal link between the van's defect and his accident either fails to consider or fails to understand this evidence.

¶21.    Likewise, the majority unduly diminishes evidence showing that Casanova gave Watson Quality Ford an opportunity to cure the van's defect. The majority correctly notes that a seller, notwithstanding a breached warranty of merchantability, must be given a chance to right its wrongs. Maj. Op. at ¶13. But Casanova put forth evidence showing that he took the van back to Watson Quality Ford for repairs for three days in April 2000. Whether this constituted a reasonable effort on Casanova's part is a clear question of fact, supported by evidence sufficient to withstanding summary judgment, to be determined by a jury. *See Mercury Marine v. Clear River Constr. Co.*, 839 So. 2d 508, 522 (Miss. 2003) ("The period of time which constitutes a 'reasonable' opportunity [to cure defects] . . . is nowhere defined as a matter of law, because it is an issue of fact.").

¶22.    Today's decision also misapplies our summary judgment standard to Casanova's claim of negligence against Watson Quality Ford. The majority's insistence that Casanova failed to demonstrate causation between Watson Quality's failure to repair and the crash is wholly unsupported by the record. Casanova clearly presented evidence sufficient to show that the van's steering mechanism malfunctioned from the very first time he drove it; that Watson Quality failed to repair the malfunction; and that the malfunction (namely, the pitman arm that ultimately broke) led to his crash on May 11, 2000.

¶23.    Plainly, the majority is unconvinced by the evidence presented in this case, but that is not the question before us. On a motion for summary judgment, we do not look at the

11

nonmoving party's cards to determine whether he has a good hand. We determine only whether he holds enough cards to play the game. Today's decision misses that elementary point, dealing to the plaintiffs of this state what can be described only as a rotten hand.

¶24.   The circuit court's denial of summary judgment for Watson Quality Ford should be affirmed, and this case should be remanded for trial. Because it is not, I dissent in part.

**EASLEY AND GRAVES, JJ., JOIN THIS OPINION.  RANDOLPH, J., JOINS THIS OPINION IN PART.**