# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-01235-SCT

*NORTH BOLIVAR CONSOLIDATED SCHOOL*
*DISTRICT AND MAURICE SMITH, IN HIS*
*OFFICIAL CAPACITY*

*v.*

*ROOSEVELT JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2021 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| TRIAL COURT ATTORNEYS: | BOYD P. ATKINSON |
| | JOHN SIMEON HOOKS |
| | LINDSEY OSWALT WATSON |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHN SIMEON HOOKS |
| ATTORNEY FOR APPELLEE: | BOYD P. ATKINSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 04/06/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. The present interlocutory appeal involves a lease for sixteenth section property between North Bolivar Consolidated School District and Roosevelt Jones. In 2019, after Jones paid his annual rent more than thirty days late, the school district, pursuant to a late penalty provision contained in the lease between the parties, assessed Jones a late fee in the amount of $11,028.60. Jones brought suit in the Chancery Court of Bolivar County, arguing, inter alia, that the district should be estopped from enforcing the late payment penalty provision because it had a custom of accepting late rent payments without penalty. Jones

asserted that he relied on the custom to his detriment when making his rent payment late. In August 2021, the school district moved for summary judgment, arguing that it cannot be estopped by the unauthorized acts of its officials. The chancellor found that the district had failed to show the acts of its officials in accepting the late payments were not authorized. The school district sought interlocutory appeal of the denial of summary judgment, and we granted.

¶2.    We conclude that the school district is a trustee of sixteenth section school lands and, consequently, bears a statutory duty to collect all funds due from the sixteenth section properties that it leases. Any past failure by it to collect such funds was unauthorized as a matter of law and cannot form the basis for estoppel. Therefore, we reverse the chancery court's judgment and render judgment in favor of the school district.

## FACTS AND PROCEDURAL HISTORY

### I.    The Consolidation of North Bolivar School District and Mound Bayou Public School District

¶3.    Mississippi Code Section 37-7-104.1, which went into effect on September 10, 2012, mandated the consolidation of six Bolivar County, Mississippi school districts into the following three designated school districts on or before July 1, 2014:

(a)    One (1) existing school district which shall be the Cleveland School District;

(b)    One (1) new consolidated school district to be designated as North Bolivar Consolidated School District which shall consist of the territory of the former North Bolivar School District and the Mound Bayou Public School

2

District. The central administrative office of the North Bolivar Consolidated School District shall be located in Mound Bayou, Mississippi; and

(c)     One (1) new consolidated school district to be designated as West Bolivar Consolidated School District which shall consist of the territory of the former West Bolivar School District, Shaw School District and Benoit School District. The central administrative office of the West Bolivar Consolidated School District shall be located in Rosedale, Mississippi.

Miss. Code Ann. § 37-7-104.1(1) (Rev. 2019).  The statute also provided:

On July 1 following the election of the new school district boards of trustees in Bolivar County, the former county board of education and the former board of trustees of North Bolivar School District, Mound Bayou Public School District, West Bolivar School District, Shaw School District and Benoit School District shall be *abolished*.

Miss. Code Ann. § 37-7-104.1(3) (Rev. 2019) (emphasis added).

## II.     The Lease

¶4.     Beginning in 2012, Jones leased a certain tract of sixteenth section property from the former North Bolivar School District. After North Bolivar Consolidated School District was created, Jones entered a new lease with the new consolidated district for the subject property on February 18, 2015, for the sum of $73,524 a year for a five-year term.  Section 2 of the 2015 lease stated, "In the event LESSEE is delinquent in the payment of rent, LESSEE shall pay a late charge equal to fifteen percent (15%) of the amount of rent past due for more than 30 days . . . ."

¶5.     Rent was due each year on January 1. Jones made his payments as follows:

i.     2015: January 19
ii.    2016: February 23
iii.   2017: January 30

3

iv.    2018: January 28
v.    2019: February 4

¶6.    Jones was more than thirty days late in making his rent payment on two occasions —in 2016 and 2019. The district did not charge him a late fee in 2016. In 2019, however, the district did charge Jones a late fee in the amount of $11,028.60. Jones wrote a check to the district on February 4, 2019, in the amount of $73,524 to cover the rent that should have been paid on January 1. Jones also paid the late fee to the district on April 4, 2019.

### III.    The Complaint

¶7.    Jones filed the instant civil action on June 10, 2020, against the North Bolivar Consolidated School District and Maurice Smith, in his official capacity as district superintendent, asserting, among other things, that the district was equitably estopped from enforcing the late payment penalty provision because the former district had a custom of accepting late payments from sixteenth section lessees without imposing a late fee. Specifically, Jones alleged that "many other lessees of 16th Section land from the North Bolivar Consolidated School District have not made their lease payments on time and have not been charged that 15% late fee."

### IV.    First Motion for Summary Judgment

¶8.    In March 2021, the school district filed a motion for summary judgment on the estoppel claim arguing, *inter alia*, it did not have a custom of accepting late rent payments without assessing late fees. While Jones claimed in his complaint that "many other lessees" had failed to make timely payments, his response in opposition to the district's motion named

4

only two lessees that allegedly had made late payments without being penalized: Jones and John Fullilove. In support of his contention, Jones submitted two pieces of evidence: a series of deposit slips for the years 2005-2014 that Jones insisted showed he and Fullilove were permitted to pay late without incurring a penalty and his own affidavit, in which he alleged that he "always paid rent late and was never . . . assessed a late fee" and that he "knew for a fact Fullilove Farms, who farms Sixteenth Section property . . . . never paid their rent on time."

¶9. In reply, the district made two arguments. First, it argued that Jones had not met his burden to establish that the former district accepted late payments without imposing a penalty because the documents submitted by Jones did not state the due date of Fullilove's lease payments, making it impossible to determine whether the payments were late. Moreover, no evidence explained the amounts appearing on the deposit slips, leaving no way to know whether a late fee was included in the amount deposited. According to the district, there was a complete absence of evidence in the record establishing a custom of accepting late lease payments without penalty.

¶10. Second, the school district argued that even if the evidence established that district officials customarily accepted late payments without penalty, Jones's estoppel claim would still fail as a matter of law because no estoppel may be enforced against the state or its counties when the acts of officers were unauthorized. The district argued that Jones had not come forward with board minutes authorizing the district's superintendent, business

manager, or other official to forego a late penalty to which the district was contractually entitled.

¶11. The chancery court dismissed Jones's other claims but denied summary judgment on Jones's estoppel claim. The court faulted the school district for "submit[ting] no proof that the slips provided were not in fact late." The court also stated that it failed to "submit proof that all contracts with North Bolivar School District have now been changed to North Bolivar Consolidated School District."

## V.     Second Motion for Summary Judgment

¶12. Following further discovery, the district moved for summary judgment a second time on August 30, 2021. It argued:

(1)     The district acts as trustee of Sixteenth Section properties and the trust duty cannot be waived. Even if its officials neglected to enforce the late payment penalty, that failure was unauthorized as a matter of law. The district cannot be estopped by the unauthorized actions of its officers; and

(2)     Jones cannot rely on Fullilove's late payments to the former district to establish a course of dealing because the acts and omissions of the former district cannot be imputed to the current one because it is a separate and distinct entity.

¶13. Attached to the motion were two leases between John Fullilove and the original district. The first lease was entered into on April 13, 2000, for the sum of $56,001.51 a year for a five-year term. Rent under the lease was due on January 15 of each year. The second lease was entered into on November 15, 2004, for the sum of $44,103.15 a year for a five-year term. Rent under the second lease was also due on January 15 of each year. Both leases

6

provided: "Lessee further agrees that if any rental payments are made after the date specified in this agreement, lessee will pay interest on said rental payments at the rate of twelve percent (12%) per annum."

¶14. The court denied summary judgment, again finding: (1) that the school district failed to show proof that the officers "did not have authorization from the school board to not collect late payments"; (2) that because the district failed "to show that the North Bolivar Consolidated School District is no longer operating under contracts wherein the former North Bolivar School District is currently listed, the Court cannot find this is a completely new entity . . ."; and (3) the provision in Fullilove's leases constituted a late payment penalty. Consequently, the chancellor determined that the deposit slips and the language in Fullilove's leases presented a genuine issue of material fact as to whether Jones reasonably relied on the district's course of conduct in making the late rent payment in 2019.

¶15. After the second denial of summary judgment, the school district timely petitioned the Court for interlocutory appeal, which we granted; it now contends the following:

I. The chancery court misapplied settled standards governing motions for summary judgment.

II. As a matter of law, a public school district cannot be estopped by its officers' unauthorized failure to enforce late payment provisions in a sixteenth section lease.

III. Jones cannot impute the acts and omissions of the former district, a separate and distinct entity.

## STANDARD OF REVIEW

¶16.   We "review the grant or denial of summary judgment de novo." ***Watson Quality Ford, Inc. v. Casanova***, 999 So. 2d 830, 833 (¶ 7) (Miss. 2008) (citing ***Est. of Johnson v. Chatelain***, 943 So. 2d 684, 686 (¶ 7) (Miss. 2006)).   "The evidence must be viewed in the light most favorable to the non-moving party." ***Id.*** (citing ***Est. of Johnson***, 943 So. 2d at 686 (¶ 7)).   "The burden of demonstrating that there is no genuine issue of material fact falls upon the party requesting the summary judgment." ***Id.*** (citing ***Est. of Johnson***, 943 So. 2d at 686 (¶ 8)).

## DISCUSSION

¶17.   The only issue necessary to address on interlocutory appeal is whether North Bolivar Consolidated School District can be estopped by its officers' alleged past failure to enforce a late payment penalty provision in a sixteenth section lease.

¶18.   The Mississippi Supreme Court has held that "the state and its political subdivisions 'may be equitably estopped under the proper circumstances.'" ***Hill v. Thompson***, 564 So. 2d 1, 14 (Miss. 1989) (quoting ***Bd. of Trs. Of Monroe Cnty. Bd. of Educ. v. Rye***, 521 So. 2d 900, 908-09 (Miss. 1988)).   However, "no estoppel may be enforced against the state or its counties where the acts of their officers were unauthorized." ***Bd. of Educ. of Lamar Cnty. v. Hudson***, 585 So. 2d 683, 688 (Miss. 1991) (quoting ***Oktibbeha Cnty. Bd. of Educ. v. Town of Sturgis***, 531 So. 2d 585, 589 (Miss. 1988)).

¶19. The district argues here that, even if its officials or officials of the former district failed at any time to enforce the late payment penalty provision in either Jones's or Fullilove's lease, such failure was unauthorized and cannot form the basis for estoppel. It asserts the purported failure was unauthorized because, as trustee of sixteenth section school lands, a board of education has an absolute statutory duty to collect all funds due from sixteenth section properties. It further argues that, consequently, any past failure to enforce the late payment penalty provision was in derogation of the duties prescribed the school district by law.

## A. Sixteenth Section Law

¶20. The district derives its authority to manage sixteenth section land from Mississippi Code Section 29-3-1(1), which provides as follows:

> Sixteenth section school lands, or lands granted in lieu thereof, constitute property held in trust for the benefit of the public schools and must be treated as such. The board of education under the general supervision of the state land commissioner, shall have control and jurisdiction of said school trust lands and of all funds arising from any disposition thereof heretofore or hereafter made. It shall be the duty of the board of education to manage the school trust lands and all funds arising therefrom as trust property. Accordingly, the board shall assure that adequate compensation is received for all uses of the trust lands, except for uses by the public schools.

Miss. Code Ann. § 29-3-1(1) (Rev. 2020).

¶21. The Mississippi Supreme Court has long held that sixteenth section land is trust land that was granted to the state of Mississippi at the time of statehood. *Morrow v. Vinson*, 666 So. 2d 802, 805 (Miss. 1995). Title to the trust lands is vested in the state, and the secretary

9

of state has general supervisory power over the lands. ***Turney v. Marion Cnty. Bd. of Educ.***, 481 So. 2d 770, 776 (Miss. 1985). "[A]s a matter of practical necessity, [the State] manages its sixteenth section trust property through local county boards of education." ***Id.*** at 777. "School boards thus stand as 'trustee[s] and as supervisors or managers' of sixteenth section lands." ***Jones Cnty. Sch. Dist. v. Miss. Dep't of Revenue***, 111 So. 3d 588, 596 (¶ 24) (Miss. 2013) (quoting ***Hill***, 564 So. 2d at 7).

¶22. In the present case, the school district contends that its duty as trustee of the subject property necessarily includes enforcing the late payment penalty provision in Jones's contract. Consequently, it claims that the application of estoppel would force it to take action inconsistent with its duty as trustee. We agree.

¶23. While the empowering statute does not set forth a board of education's specific authority, it creates a general charge that the board manage the school trust lands "as trust property" and "assure that adequate compensation is received" for the trust land. ***Turney***, 481 So. 2d at 777 (internal quotation marks omitted) (quoting Miss. Code Ann. § 29-3-1(1)). "This direction necessarily assumes that the board has authority to perform all actions necessary, lawful, and proper to perform its statutory duty." ***Id.***

¶24. The standard of care chargeable to members of school boards in the performance of the statutory duty is the same standard applicable to a general trustee. ***Id.*** As trustees, members of the board "are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent

10

[persons] of discretion and intelligence in like matters employ in their own affairs." *Id.* (alteration in original) (quoting George Gleason Bogert et al., *Bogert's Law of Trusts* § 93 (5th ed. 1973)). The board must use "[o]rdinary care, skill, and prudence . . . in the performance of all their duties, unless the trust instrument provides otherwise." *Id.*

¶25. Applying the standard of care to sixteenth section leases, the Court held in *Turney,* 481 So. 2d at 778, that Mississippi Code Section 29-3-1(1) grants a board of education the authority to "include terms in the leases that persons of ordinary prudence would include." In *Turney*, the Marion County Board of Education argued that its lease, Turney was void because it was never signed by Turney. *Id.* Turney appealed, arguing that the Board was not authorized to require him to sign the lease agreement because the Board cannot impose requirements on the lessee not specifically addressed by the empowering statute. *Id.* The Court disagreed and held:

> Applying to this case the general standard to exercise care and skill that a person of ordinary prudence would exercise in dealing with his or her own property, this Court holds that the Board of Education may require its lessees of sixteenth section land to sign its leases. This Court further holds that the Board of Education may include terms in the leases that persons of ordinary prudence would include. The signature requirement is a reasonable demand, and it is fully justified, by implication, by § 29-3-1(1) . . . . In requiring the lessees' signature, the Board exercised the care and skill of an ordinary prudent person to protect the beneficiaries of the trust.

*Id.*

¶26. Like the signature requirement in *Turney*, late payment penalties are not specifically addressed by Section 29-3-1(1). However, the power to assure adequate funds are received

11

for the land plainly embraces the making of reasonable terms in the lease to ensure payment is made. Without such authority, a board would be unable to enforce timely payment of rent and, by implication, unable to fulfill its statutory duty. The imposition of late payment penalties is, therefore, a necessary, lawful, and proper exercise of a school board's statutory duty under Section 29-3-1(1). By including a late payment penalty provision in Jones's lease, the district exercised the care and skill of an ordinary, prudent person to protect the beneficiaries of the trust. Accordingly, its duty to assure adequate compensation is received for all uses of the trust lands necessarily includes the enforcement of late payment penalty provisions in sixteenth section leases.

## B. Unwaivable Nature of Duty

¶27. The Mississippi Supreme Court has recognized that the state's trust duty is a mandatory obligation that cannot be waived. *Oak Grove Marketplace, LLC v. Lamar Cnty. Sch. Dist.*, 287 So. 3d 924, 930 (¶ 21) (Miss. 2020). Indeed, "the State, in its role as the trustee of Sixteenth Section Land, cannot contract away its trustee duties, 'any more than the State can surrender its police power in the administration of government and in the preservation of peace and order.'" *Id.* (quoting *State ex rel. Coleman v. Dear*, 212 Miss. 620, 55 So. 2d 370, 373-74 (Miss. 1951)). "The continuing duty of the trustee is enforceable at any time, and may not be avoided because of past defaults." *Hill*, 564 So. 2d at 7 (citations omitted).

12

¶28. Because enforcing late payment penalties is part of a school board's statutory duty as trustee of sixteenth section land, such enforcement cannot be contracted away, even by mutual agreement of the parties. *See* **Oak Grove Marketplace, LLC**, 287 So. 3d at 930. Accordingly, any past failure of district officials to enforce a late payment penalty cannot form the basis for equitable estoppel to prevent the district from enforcing the penalty at a later time.

¶29. The chancellor determined summary judgment was not proper because the school district failed to offer proof that the acts were unauthorized. However, doing so was error, as the alleged custom on which Jones relies in asserting his equitable estoppel claim was based on the unauthorized actions of district officers. We hold, therefore, that equitable estoppel cannot apply to prevent the school district from enforcing the late payment penalty provision in Jones's lease. Accordingly, we reverse the chancery court's denial of summary judgment and render judgment in favor of the school district.

¶30. **REVERSED AND RENDERED.**

    **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

13