# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-00073-SCT

*GLORIA BAKER, CONNIE CORNWALL,*
*CAROLYN GREER, DANIEL MORRIS, AND JUDY*
*TRAVIS*

*v.*

*RAYMOND JAMES & ASSOCIATES INC., LOGAN*
*B. PHILLIPS JR., AND STEVEN KANE SAVELL*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | FRANK CHANDLER BREESE, III |
| | STEVIE FARRAR RUSHING |
| | ALAN W. PERRY |
| | TERRY R. WEISS |
| | STEFANIE M. WAYCO |
| | JOHN HOUSTON DOLLARHIDE |
| | JEFFREY R. BLACKWOOD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | FRANK CHANDLER BREESE, III |
| ATTORNEYS FOR APPELLEES: | JEFFREY R. BLACKWOOD |
| | MICHAEL JAMES BENTLEY |
| | JAMES WILBOURN VISE |
| | STEVIE FARRAR RUSHING |
| | STEFANIE M. WAYCO |
| | TERRY R. WEISS |
| | ROBERT T. HIGGINBOTHAM, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 03/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     The Plaintiffs sued the Defendants in the Hinds County Circuit Court for claims relating to their financial advisor's alleged malfeasance.  The trial court granted summary judgment in favor of the Defendants, finding that all of the Plaintiffs' claims were time-barred.  The Court of Appeals reversed with respect to the Plaintiffs' common-law claims, finding that a genuine issue of material fact existed as to when the Plaintiffs learned or through reasonable diligence should have learned of the Defendants' alleged malfeasance. *Baker v. Raymond James & Assocs. Inc.*, No. 2019-CA-00073-COA, 2020 WL 1685704 (Miss. Ct. App. Apr. 7, 2020).[1]

¶2.     This Court granted certiorari on the Defendants' claim that the Court of Appeals misapplied the latent-injury discovery-rule exception to the catch-all three-year limitations period provided by Mississippi Code Section 15-1-49 (Rev. 2019).  Because we find that no genuine issue of material fact exists as to whether the Plaintiffs' common-law claims are time barred, we reverse the Court of Appeals' decision and reinstate the trial court's judgment.

**FACTS**

---

[1] The Court of Appeals affirmed the trial court's ruling that Plaintiffs' claims were time-barred under the Mississippi Securities Act of 2010, Mississippi Code Sections 75-71-501 and -502 (Rev. 2016), since Plaintiffs did not challenge this ruling on appeal. *Baker*, 2020 WL 1685704, at *9.

¶3.     On October 19, 2017, the Plaintiffs filed suit against the Defendants.  Between 2002 and 2005, the Plaintiffs (all retirees from BellSouth) rolled most of their retirement assets over to Steven Savell, their financial advisor at Morgan Keegan.[2] *Baker*, 2020 WL 1685704, at *3.  Savell assured Plaintiffs that "he would invest [their] money in a way that would provide [them] with income for the remainder of [their] life and that [their] principal would grow over time." *Id.* at *4 (alteration in original) (internal quotation marks omitted).  Savell remained in control of these accounts until 2013. *Id.* at *4.

¶4.     During the years Savell handled these accounts, the Plaintiffs continually sustained sizeable losses. *Id.* at *5.  The Plaintiffs claimed that Savell improperly recommended that they invest in two unsuitable penny stocks and then marked the purchases "unsolicited" so as to prevent detection by the brokerage firm's policy against soliciting such stock.  Plaintiffs also alleged that Savell purchased for them certain annuities designed to be held for the long term, which Savell had them cash out early in order to purchase new annuities that would pay him and Morgan Keegan and/or Raymond James large commissions.

¶5.     The Plaintiffs acknowledged receiving monthly and year-end account statements reflecting these losses throughout the relevant years. *Id.* at *4. When the Plaintiffs questioned Savell about these losses, he replied with assurances such as "everything [is] fine," "[you'll] fully recover," "stay the course," "hang in there," and "we're still okay." *Id.* at *5 (internal quotation marks omitted).

---

[2] Morgan Keegan was later acquired by Raymond James.

¶6. Savell left Morgan Keegan in 2013 after it was acquired by Raymond James, at which time the Plaintiffs had stopped using Savell as a financial advisor. In 2015 and 2016, the Plaintiffs learned their coworkers, also former clients of Savell, had filed an arbitration claim against Raymond James alleging Savell had mishandled their accounts. *Id.* at *5. The Plaintiffs then contacted a lawyer to determine potential claims and subsequently filed suit in October 2017.

¶7. Plaintiffs conceded that "[t]here is no dispute the malfeasance complained of occurred between 2006 and 2013[, nor is there] dispute that more than three years elapsed after the malfeasance before Appellants filed their Complaint." Plaintiffs contended, however, that because they were inexperienced and unsophisticated investors they could not possibly have understood at the time that they had any recourse for their losses.

¶8. The trial court found all the Plaintiffs' claims were time-barred by Mississippi's catch-all three-year statute of limitations and granted summary judgment in favor of the Defendants. *Id.* at *6. The Court of Appeals reversed that decision. *Id.* at *20. The Court of Appeals held that whether the Plaintiffs' account statements were enough to contradict Savell's vague reassurances and to toll the statute of limitations was a genuine issue of material fact, making summary judgment inappropriate. *Id.* at *19.

**DISCUSSION**

¶9. "When considering issues of law, such as statutes of limitation, this Court employs a de novo [standard of] review." ***F&S Sand, Inc. v. Stringfellow***, 265 So. 3d 170, 173

4

(Miss. 2019) (citing *Andrus v. Ellis*, 887 So. 2d 175, 179 (Miss. 2004)). Likewise, we review a trial court's grant or denial of a motion for summary judgment de novo. ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010) (citing ***Burleson v. Lathem***, 968 So. 2d 930, 932 (Miss. 2007)).

¶10. There is no dispute that the catch-all three-year limitations period under Section 15-1-49 applies in this case. Section 15-1-49 provides in relevant part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of action accrued, and not after.
>
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15-1-49(1), (2) (Rev. 2019).

¶11. Under subsection (1), the "statute of limitations begins to run when the cause of action accrues," ***Anderson v. LaVere***, 136 So. 3d 404, 411 (Miss. 2014) (citing Miss. Code Ann. § 15-1-49(1)), meaning "when the right to sue becomes vested." *Id.* (internal quotation mark omitted) (quoting ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812, 815 (Miss. 2006)). With subsection (2), however, the legislature has carved out an exception for latent injuries. This exception prevents the cause of action from accruing by tolling the clock "until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2).

5

¶12.    This Court has defined latent injury "as one where the 'plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (alterations in original) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)).  The latent injury "must be undiscoverable by reasonable methods[,]" and plaintiffs "must be reasonably diligent in investigating [their] injuries." *Wright v. Quesnel*, 876 So. 2d 362, 366 (Miss. 2004) (citing *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004)).  The intent behind the discovery rule "is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them." *Id.* at 367 (internal quotation mark omitted) (quoting *Hayes*, 868 So. 2d at 1001).

¶13.    Whether the statute of limitations under Section 15-1-49 "is tolled by the discovery rule often turns on the factual determination of 'what the plaintiff knew and when.'" *Benvenutti v. McAdams*, 162 So. 3d 808, 814 (Miss. 2015) (internal quotation mark omitted) (quoting *Stringer v. Trapp*, 30 So. 3d 339, 342 (Miss. 2010)).  Thus, whether the suit is barred by the statute of limitations may certainly present a jury question. *Id.*  But, "as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Id.* (quoting *Stringer*, 30 So. 3d at 342).

¶14.    Here, the Defendants claimed that the Plaintiffs' common-law claims were time-barred under Section 15-1-49 because all the complained-of transactions and alleged

6

malfeasance took place between 2006 and 2013, with most of the stock purchases taking place before 2009. It is undisputed that the Plaintiffs received monthly account statements showing the fees the Plaintiffs were paying to Raymond James. It is also undisputed that the statements showed the declining value of their penny-stock shares and the corresponding drop in their other investments.

¶15. The Defendants contended that the Plaintiffs were aware as early as 2007 and by no later than the end of 2008 that each had realized substantial losses. By March 2007, each Plaintiff had sold their "Canwest" penny stocks and had received written confirmation and account statements reflecting the purchases, the sales, and that their investments had sustained significant losses. By December 2008, each Plaintiff had received written trade confirmations and account statements that their "Ridgway" penny-stock investments had sustained a 90 percent loss.

¶16. The Defendants argued that because the monthly account statements showed the complained-of fees the Plaintiffs were paying and that the Plaintiffs' investments were not in line with their investment growth objectives, the statute of limitations began to run no later than when Plaintiffs received their monthly statements in 2009.

¶17. In response, the Plaintiffs did not challenge these facts. Rather, the Plaintiffs claimed that because they were inexperienced and unsophisticated investors, they could not possibly have understood, by the statements alone, that they had any recourse for their losses. The Plaintiffs argued that the statute of limitations was tolled until 2016, when they heard other

7

former investors had filed an arbitration claim against Savell and consulted a lawyer to discover any potential causes of action against him.

¶18.   The Plaintiffs equated their case to that of legal-malpractice cases, relying specifically on *Bennett v. Hill Boren P.C.*, 52 So. 3d 364 (Miss. 2011).  In *Bennett*, this Court reiterated that Section's 15-1-49's three-year limitations period applies to legal-malpractice actions. *Id.* at 369.  *Bennett* then provided as follows:

> Under the discovery rule, as applied in a legal-malpractice action, the statute of limitations begins to run on the date that the plaintiff learns, or through reasonable diligence, should have learned, of the negligence of the lawyer. *Smith* [*v. Sneed*, 638 So. 2d 1252, 1253 (Miss. 1994)].  The discovery rule is applied when the facts indicate that "it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788, 794 (Miss. 1998)[, (*overruled on other grounds by* **Stockstill v. Gammill**, 943 So. 2d 35 (Miss. 2006)].  In *Smith*, the Court found that the discovery rule applies when it would be impractical to require a layperson to have discovered the malpractice at the time it happened.  *Smith*, 638 So. 2d at 1257-58.  This is because requiring a layperson to ascertain legal malpractice at the time it occurs would necessitate the retention of a second attorney to review the work of the first.  *Id.* (citing *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 98 Cal. Rptr. 837, 491 P.2d 421, 428 (1971)).

*Bennett*, 52 So. 3d at 369.

¶19.   The trial court found here that the latent-injury discovery rule did not apply.  According to the trial court,

¶20.   To discover their injuries, Plaintiffs simply had to glance at their account statements, which would have alerted them to substantial losses about which they now complain.  Plaintiffs did not require advanced degrees or financial backgrounds to realize that those statements showed investment activity inconsistent with their objectives.  The plain language of Plaintiffs' account

8

statements contradicted [Defendants'] alleged misrepresentations that the investments would be appropriate for growth oriented investors.

¶21. Noting **Bennett**, however, the Court of Appeals majority found that given the Plaintiffs' lay status, a genuine issue of material fact existed about when the Plaintiffs learned or through reasonable diligence should have learned of the Defendants' alleged malfeasance. **Baker**, 2020 WL 1685704, at *9. According to the Court of Appeals majority, Savell's alleged wrongdoing was "inherently undiscoverable" given the Plaintiffs' financial inexperience, the complicated nature of Savell's investment activities, the sophisticated financial instruments at issue, the fact that Plaintiffs continued to receive their monthly retirement checks, and Savell's repeated reassurances when the Plaintiffs questioned him about the decline of their investments. **Id.** (internal quotation marks omitted).

¶22. We disagree with the Court of Appeals majority. The facts and circumstances found in **Bennett** are distinguishable from those here. *See* **Stringfellow**, 265 So. 3d at 174 ("Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonably should have known that an injury existed." (internal quotation marks omitted) (quoting **Am. Optical Corp. v. Rankin**, 227 So. 3d 1062, 1075 (Miss. 2017).

¶23. In **Bennett**, this Court found that a genuine issue of material fact existed as to whether two attorneys actively concealed potential negligent conduct on their part that resulted in their clients's lawsuit against two defendants ultimately being dismissed for want of prosecution. **Bennett**, 52 So. 3d at 367-73. The alleged legal malpractice arose from the

failure of one of the attorneys to effect service of process on one of the defendants. *Id.* at 367. Despite the clients' repeated inquiries about the status of their lawsuit, the other attorney failed to inform the clients that their case could not proceed against one of the defendants for lack of process. *Id.* at 372. The attorney also reassured the clients that "things were progressing" in the lawsuit, until the attorney finally informed the clients that the lawsuit could no longer proceed because there was no evidence of negligence on behalf of the remaining defendant. *Id.*

¶24. As this Court has explained, the type of fiduciary relationship that exists between attorney and client, obligates an attorney "to render full and fair disclosure of facts material to the client's representation." *Smith*, 638 So. 2d at 1257 (Miss. 1994) (citing *McClung v. Johnson*, 620 S.W.2d 644 (Tex. Civ. App. 1981), *disapproved on other grounds by Willis v. Maverick*, 760 S.W.2d 642, 645 n.2 (Tex. 1988)). And "breach of the duty to disclose is tantamount to concealment." *Bennett*, 52 So. 3d at 372 (quoting *Smith*, 638 So. 2d at 1257).

¶25. Here, no evidence was presented of any active concealment on the part of the Defendants with regard to the Plaintiffs' investment portfolios. Rather, the evidence clearly shows that the Plaintiffs should have been (and were) aware as late as December 2008 that they had sustained almost total losses from Savell's purchases of the penny stocks.

¶26. That Savell had reassured them that everything would be okay after they questioned him about their losses is not—by itself—evidence of any active concealment on the part of the Defendants. The Plaintiffs presented no evidence, nor even alleged, that any of the

10

information contained in their monthly account statements was false or misleading. The Plaintiffs had everything before them in 2008 to put any reasonable person (layman or otherwise) on inquiry that Savell had made some bad or risky investments, which purportedly were not in line with their investment growth objectives.

¶27.    Further, evidence was presented that the Plaintiffs who purchased long-term annuities expressly acknowledged in writing at the time of purchase that they were aware of and agreed to the charges associated with the annuities. The monthly account statements sent to the Plaintiffs also expressly directed investors to inform Morgan Keegan "if any transaction or other information appears to be in error or not in accordance with your understanding or instructions." No evidence was presented that the Plaintiffs ever issued a complaint to Morgan Keegan or Raymond James against Savell.

¶28.    We agree with Judge McCarty's dissent and the trial court's ruling that in order for the Plaintiffs "[t]o discover their injuries, Plaintiffs simply had to glance at their account statements, which would have alerted them to the substantial losses about which they now complain." *Baker*, 2020 WL 1685704, at *10 (McCarty, J., concurring in part) (alteration in original) (internal quotation marks omitted). As Judge McCarty and the trial court concluded, it "did not require advanced degrees or financial backgrounds to realize that those statements showed investment activity inconsistent with [the Plaintiffs'] objectives." *Id.* (internal quotation marks omitted).

**CONCLUSION**

11

¶29. For these reasons, we find that no genuine issues of material fact exist as to when the Plaintiffs learned or through reasonable diligence should have learned of the Defendants' alleged malfeasance. Therefore, we reverse the Court of Appeals' decision, and we reinstate and affirm the trial court's judgment dismissing the Plaintiffs' claims as time barred.

¶30. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. RANDOLPH, C.J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶31. Respectfully, I dissent. When reviewing a grant of summary judgment, this Court "must carefully review all evidentiary matters before the Court . . . in the light most favorable to the party against whom the motion for summary judgment is made." *Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 686 (Miss. 2006) (citing *Corey v. Skelton*, 834 So. 2d 681, 684 (Miss. 2003)). Viewing the evidence in the light most favorable to the Plaintiffs, I agree with the Court of Appeals' finding "that given plaintiffs' lay status there exists a genuine issue of material fact when the plaintiffs learned, or through reasonable diligence should have learned, of the defendants' alleged malfeasance." *Baker v. Raymond James & Assocs. Inc.*, No. 2019-CA-00073-COA, 2020 WL 1685704, at *9 (Miss. Ct. App. Apr. 7, 2020).

¶32.    Mississippi Code Section 15-1-49(2) (Rev. 2019) controls the statute of limitations in cases that involve latent injuries and provides that the statute of limitations "does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." "A latent injury is defined as one where the 'plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (alterations in original) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)). "[T]his Court has held that if a latent injury is *not* present the discovery rule would not apply." *Id.* (citing *Chamberlin v. City of Hernando*, 716 So. 2d 596, 602 (Miss. 1998)). Additionally, this Court has said:

> The term "latent injury" while seemingly vague does have definitive boundaries. For an injury to be latent it must be undiscoverable by reasonable methods. *Donald*, 735 So. 2d at 168. For instance this Court has noted that some plaintiffs may require access to medical records to discover the injury. *Sarris v. Smith*, 782 So. 2d 721, 725 (Miss. 2001). While others might gain enough knowledge through personal observation or experience. *Robinson v. Singing River Hosp.*, 732 So. 2d 204, 208 (Miss. 1999). Some injuries may be indiscernible until a medical expert notifies the plaintiff of possible negligence. *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d [199, 206 (Miss. 1999)]. Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonable should have known that an injury existed. *Sweeney v. Preston*, 642 So. 2d [332, 336 (Miss. 1994)].

*Id.* at 51.

¶33.    The majority finds that "[t]he Plaintiffs had everything before them in 2008 to put any reasonable person (layman or otherwise) on inquiry that Savell had made some bad or risky

13

investments, which purportedly were not in line with their investment growth objectives." Maj. Op. ¶ 26. Specifically, the majority finds that "[t]he Plaintiffs presented no evidence, nor even alleged, that any of the information contained in their monthly account statements was false or misleading." Maj. Op. ¶ 26. I strongly disagree. The monthly account statements the majority relies on would alert an inexperienced investor that the losses suffered were the result of normal market forces. Additionally, when the monthly account statements are considered with Savell's multitude of reassurances, an inexperienced investor would be led to believe that the losses were due to usual market forces on a bad or risky investment and not the result of fraud, misrepresentation, or negligence. Losses are understood to be a normal risk of investing and do not—by themselves—raise the alarm to possible fraud or negligence. The Court of Appeals correctly noted that "[t]he record reflects that Savell allegedly engaged in complex investment activities involving the plaintiffs' accounts[]" and that Savell took actions to "allegedly . . . prevent detection by the brokerage firm[.]" ***Baker***, 2020 WL 1685704, at *8. Similar to some medical cases, some injuries may not be detectable until after a knowledgeable financial advisor alerts the plaintiff to the wrongdoing. *See* ***Barnes v. Singing River Hosp. Sys.***, 733 So. 2d 199, 206 (Miss. 1999) ("[The Barneses] could not reasonably have known that Singing River was responsible for those injuries until their medical expert notified them of the possible negligence on May 8, 1996."). As the majority explains, "[t]he intent behind the discovery rule 'is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them.'" Maj. Op. ¶ 12

14

(quoting **Wright v. Quesnel**, 876 So. 2d 362, 367 (Miss. 2004)). The Plaintiffs here exercised reasonable diligence when they inquired of their financial advisor, Savell, about their losses in an attempt to understand why their investments were doing poorly. In response, Savell gave reassurances to the Plaintiffs, such as "that everything was fine, and that [they] would fully recover," "stay the course," "hang in there," "we're still okay[.]" **Baker**, 2020 WL 1685704, at *2 (first alteration in original) (internal quotation marks omitted). The Plaintiffs had no reason to doubt Savell's reassurances. Without those reassurances, the Plaintiffs could have reasoned that their losses had been brought about by something other than normal market forces. It was Savell's words of comfort that kept the Plaintiffs from discovering the true cause of their losses.

¶34. The majority finds against the Plaintiffs because "[n]o evidence was presented that the Plaintiffs ever issued a complaint to Morgan Keegan or Raymond James against Savell." Maj. Op. ¶ 27. But the lack of a complaint against Savell by the Plaintiffs illustrates how secretive and inherently undiscoverable Savell's actions were. From the record it appears that Savell's complex investment strategies were not complained of until 2014, and it was not until 2015 that a complaint was filed with Mississippi's Secretary of State.[3] I cannot discern

---

[3]It is clear that Savell's actions went on for several years without detection, as the earliest date of detection apparent from the record was in 2014 when an arbitration case was filed against Raymond James. *See **Baker***, 2020 WL 1685704, at *2 n.2. The record includes also the Secretary of State's administrative consent order, which states that in 2015, it "received a complaint from a Mississippi investor alleging improper brokerage activities by Savell[.]"

how the majority can find that these inexperienced and unsophisticated investors were supposed to discover the Defendants' misrepresentation, fraud, and negligence in 2007 or 2008, when the office in charge of regulating and investigating such activities did not discover the scheme until 2015.

¶35. I agree with the Court of Appeals that this Court's "analysis in *Weathers* [*v. Metropolitan Life Insurance Co.*, 14 So. 3d 688 (Miss. 2009)] is helpful in this case." *Baker*, 2020 WL 1685704, at *5. In *Weathers*, this Court addressed "the question of whether the plain language of the [life insurance] policy contradicts McKie's [(the insurance agent's)] representations to Weathers, such that Weathers should have been put on notice that the representations were false." *Weathers*, 14 So. 3d at 694. This Court found that

> When reviewing the terms of the policy in the case *sub judice* in the light most favorable to Weathers (as we must when reviewing a grant of summary judgment), we find that a genuine issue of material fact exists as to whether McKie's representations conflicted with the plain language of the policy, so as to place Weathers on notice of any alleged misrepresentation or fraud at the time the policy was issued. . . . Furthermore, a juror could conclude reasonably that the sale of the policy was structured so that Weathers would have no way of knowing he had been defrauded until after the applicable statute of limitations had run. *See Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 778 N.E. 2d 16, 23 (2002) ("A jury could find that it was the very essence of the marketing strategy behind the vanishing-premiums sales pitch to create a false sense of security and complacency whereby the policy holder continued to pay premiums for several years based on unrealistic expectations of the policy's future value.").

*Id.* (citation omitted). Here, "Savell's assurances contradicted the plain language of the plaintiffs' account statements[,]" which concealed the true nature of their losses. *Baker*, 2020 WL 1685704, at *5. Similarly, "a juror could conclude reasonably that [Savell's reassurances

16

were given] so that [the Plaintiffs] would have no way of knowing [they] had been defrauded until after the applicable statute of limitations had run." *Weathers*, 14 So. 3d at 694.

¶36.    Reviewing the evidence in the light most favorable to the Plaintiffs, I find that the Plaintiffs' common law claims constitute a latent injury for two reasons: (1) the Defendants' actions were done in a "secretive" and an "inherently undiscoverable nature," *PPG*, 909 So. 2d at 50 (quoting *Donald*, 735 So. 2d at 168), and (2) it was unrealistic to expect inexperienced investors, i.e., laymen, to perceive that their investment losses were not the result of normal market forces but rather the result of misrepresentation, fraud, and negligence. Therefore, a genuine issue of material fact exists, and I would affirm the Court of Appeals' decision.

**KING, P.J., JOINS THIS OPINION.**